IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 6:16-cv-1299 |
| | § | |
| Certain Property described in | § | |
| Attachment A, | § | |
| Defendants. | § | |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

In accordance with Fed. R. Civ. P. Supplemental Rule G(2), the United States of America, Plaintiff, brings this complaint and alleges as follows:

Nature of the Action

1. This is an action to forfeit property to the United States for violations of 18 U.S.C. §§ 924(c) and 1956(h), and 21 U.S.C. §§ 813, 841, 846, or 863.

Defendant In Rem

2. The defendant property is described in Attachment A (collectively "Defendant Property"). The Defendant Property was included in the Notice of Intent to Seek Criminal Forfeiture in the Superseding Indictment in Case No. 6:14CR63 pending in the Eastern District of Texas, Tyler Division. On December 3, 2014, the Defendant

Property was seized pursuant to search and seizure warrants and lis pendens were filed for real property items.

Jurisdiction and Venue

4. The Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

5. The Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

Basis for Forfeiture

7. The Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), because it constitutes money, negotiable instruments, securities and other things of value furnished and intended to be furnished by any person in exchange for a controlled substance in violation of the Controlled Substances Act; proceeds traceable to such an exchange; or money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act; pursuant to 21 U.S.C. § 881(a)(7), because it constitutes real property which was used to commit, or to facilitate the commission of a violation of the Controlled Substances Act; pursuant to 18 U.S.C. §

981(a)(1)(A) because it constitutes any property, real or personal, involved in a violation of 18 U.S.C. § 1956(h), or any property traceable to such property; and pursuant to 18 U.S.C. § 924(d)(1) because it constitutes any firearm or ammunition involved in or used in any knowing violation of subsection a(4), a(6), (f), (g), (h), (i), (j), or (k) of section 922.

Facts

8. The Defendant Property is subject to forfeiture based on the following facts:

a. Beginning in 2014, DEA Dallas Field Division and other investigative agencies investigated Jeremy and Shanna Tidwell (hereinafter "the Tidwells"), Brian Tidwell (Jeremy Tidwell's brother), and others for the illegal distribution of synthetic drugs through their retail stores, sale of drug paraphernalia, related money laundering violations, and possession of firearms during and in furtherance of drug trafficking crimes.

b. This investigation is based on information developed from complaints from numerous sources, including local law enforcement agencies, undercover purchases, customer statements, surveillance, seizures, and financial analysis, which indicate that the Tidwells' retail stores distributed synthetic drugs and illegal drug paraphernalia.

c. Jeremy Tidwell is the President of The Tidwell Corporation, and Shanna Tidwell is the Vice President/Secretary/Treasurer. Additionally, the Tidwells are the executive officers in Oliver & Addison, LLC, and Wheels Up Aviation, LLC. Brian Tidwell worked for the Tidwell Corporation for a period of time during the investigation. A review of Texas Workforce Commission records shows that the Tidwells' only income was from The Tidwell Corporation. The Tidwell Corporation's only source of income was proceeds from the Glass Dragon stores.

d. Numerous controlled purchases of synthetic drugs were made by undercover agents and cooperating sources. Completed lab analysis for a majority of exhibits indicates that the substances are either Schedule 1 controlled substances or are controlled substance analogues under 21 U.S.C. § 813. All synthetic drug products are misbranded and are designed to give the same effect as marijuana and enable the user to pass drug tests as the substance is not detected in urinalysis testing.

e. Between March 3, 2012, and December 3, 2014, numerous seizures of synthetic drugs were made by various Texas law enforcement agencies. Seized packages were identified as coming from the Tidwells' stores because they bore bar code labels containing the store's name. Between March 6, 2014, and November 10, 2014, controlled purchases of synthetic drugs were made at the Tidwells' retail locations. On December 3, 2014, the Longview Candle Store contained approximately 1,100 pounds of synthetic drugs.

f. On November 10, 2014, an undercover officer entered each of the Tidwells' stores and observed numerous styles and types of drug paraphernalia with common drug related uses offered for sale to include: bongs for smoking marijuana, digital scales for weighing drugs, rolling papers for marijuana, system cleanse to assist with avoiding drug detection during a drug screen, and glass pipes for smoking marijuana and methamphetamine. These products were also present in the stores on December 3, 2014.

g. Financial analysis of the Tidwells' known bank accounts since May 2012 indicated that in excess of $14,000,000 in United States currency was deposited into the Tidwell Corporation accounts. Cash deposits into the Tidwell Corporation accounts varied between $5,000.00 and $140,000.00. Prior to Austin Bank closing the Tidwells' accounts in the Spring of 2014, Jeremy, Shanna, and/or Brian Tidwell made multiple cash deposits per week by bringing in cardboard boxes, described as ranging from shoe box size to copy paper size, full of United States currency. Money from illegal activity has been traced through several of the Tidwells' bank accounts, including those listed in Attachment A.

h. Between February 10, 2014, and September 30, 2014, cash deposits totaled over $4,100,000. Credit card transaction deposits in excess of $800,000 were also received.

i. Tidwell Corporation's legitimate income was limited to negligible sales of candles, and sales of vaping products. Expenditures by the Tidwell Corporation for "vaping inventory" totaled approximately $16,652.00.

j. Any legitimate money (i.e. derived from non-illegal means) in the Tidwells' bank accounts was commingled with proceeds from the sale of synthetic drugs and drug paraphernalia.

Potential Claimants

9. The known potential claimants to the Defendant Property are:

a. Jeremy Tidwell – Gregg County Jail, 101 East Methvin Street, Suite 635, Longview, Texas, 75601

b. Shanna Tidwell – 130 Coyle Road, Gilmore, Texas, 75645

c. Brian Tidwell – 2405 Oak Manor #B, Arlington, Texas, 76012

d. Marie Tidwell – 2405 Oak Manor #B, Arlington, Texas, 76012

Claim for Relief

10. The United States respectfully requests that the Court forfeit the Defendant Property to the United States, award costs and disbursements in this action to the United States, and order any other relief that the Court deems appropriate.

Respectfully submitted,

BRIT FEATHERSTON
ACTING UNITED STATES ATTORNEY

/s/ *Mary Ann Cozby*

Mary Ann Cozby
Assistant United States Attorney
Texas Bar No. 02656020
110 N. College, Suite 700
Tyler, Texas 75702
(903) 590-1400
(903) 590-1439
mary.ann.cozby@usdoj.gov

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I, Jeff Kennemer, hereby state that:

1. I am a Special Agent with the Drug Enforcement Administration.

2. I have read this Complaint, and the information contained herein is true and correct to the best of my knowledge.

3. The information contained in this Complaint comes from the official files and records of the United States, statements from other law enforcement officers, and my investigation of this case.

I state and verify under penalty of perjury that the foregoing is true and correct.

Dated: 11-15-2016

Jeff Kennemer
Special Agent